IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

_____

MATTHEW MOYER                                          )
20 Millrock Road                                             )
New Paltz, NY 12561                                      )
                                                                      )
                                                                      )
                              Plaintiff,                          )
                                                                      )          Case No.: 14-2332
                                                                      )
              v.                                                    )          COMPLAINT AND JURY
                                                                      )          DEMAND
THE ASSOCIATED PRESS                               )
450 West 33rd Street                                       )
New York, NY 10001                                      )
                                                                      )
                              Defendant.                       )
_____)

COMPLAINT

Plaintiff, Matthew Moyer ("Plaintiff," or "Mr. Moyer"), by his attorneys, brings this

complaint in the United States District Court for the District of Maryland against The Associated

Press ("Defendant," or "the AP"), alleging as follows:

NATURE OF THE CASE

1.       Mr. Moyer is an internationally renowned award-winning photojournalist, whose work

has appeared in *National Geographic*, *The New York Times*, *The Independent*, and *The

Guardian*, among others.  From 1996 to 1999 and from 2001 to 2003, he worked as an

independent, freelance photographer for the AP, taking assignments and delivering photographs

for that agency's deadlines, in exchange for an assignment fee.  In addition, he offered photos for

sale to the AP that he took while he was not on assignment for the AP ("on spec").  When Mr.

Moyer photographed on spec, he would present the photographs to the AP for review, and the

AP would pay him a flat, per-image fee for each image that they requested to put out over the AP wire.

2.      On information and belief, the AP has been a leading news wire service, in print and more recently in the digital realm, since its founding more than 150 years ago. On information and belief, it is owned and operated by 1,400 American newspapers on a not-for-profit basis, and it is run by a board of directors consisting of publishers, editors, and executives from the companies that are its members and main customers.

3.      The AP has failed to provide Mr. Moyer with a proper accounting and full payment for uses of his photographs that he did not authorize. Further, the AP has offered Mr. Moyer's photographs for sale on its website without Mr. Moyer's permission and without compensating Mr. Moyer for any sales of his photographs that it has made. For nearly three years, Mr. Moyer has asked the AP to stop using and offering his photographs for sale without his permission, but the AP has not complied and Mr. Moyer's work continues to be used by the AP and remains available for sale on the AP's website.

4.      By this action, Mr. Moyer seeks a full and complete accounting of all amounts due to him, as well as compensatory, statutory, and punitive damages, and injunctive relief for copyright infringement.

<u>PARTIES</u>

5.      Mr. Moyer is an individual residing in the State of New York, with a business address at 20 Millrock Road, New Paltz, NY, 12561.

6.      On information and belief, the AP is a corporation with a principal place of business at 450 West 33rd Street, New York, NY, 10001.

JURISDICTION AND VENUE

7.      This Court has personal jurisdiction over Defendant because the AP has continuous and ongoing business contacts with residents of Maryland through, among other things, its office and deeply rooted newsgathering operation in Maryland, its dissemination of news to Maryland residents through local print and broadcast media, and its ownership and/or control of one or more interactive websites aimed at residents of Maryland.

8.      This case arises under the Copyright Act, 17 U.S.C. § 101, *et seq*.

9.      This court has subject matter jurisdiction to hear Plaintiff's copyright claim under 17 U.S.C. § 101 *et seq*. and 28 U.S.C. §§ 1331 and 1338.

10.     Venue in this District is proper under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a).

FACTS

11.     Mr. Moyer is a talented, experienced, and internationally renowned photojournalist who is known for documenting the major social and cultural issues of our day.  During a career spanning more than 20 years, Mr. Moyer's photographs of the September 11, 2001, attacks on the World Trade Center, the conflicts in Afghanistan and Iraq, and the struggles of rural Americans have been published and exhibited worldwide.  He often worked on assignment for and offered photographs that he took on spec to the AP from 1996 to 1999 and from 2001 to 2003.  For the past decade, he has photographed feature stories for *National Geographic* magazine and special-projects for non-profit foundations.  In addition, he has worked on assignment for major publications including *The New York Times*, *The Independent*, and *The Guardian*.  Mr. Moyer has won several awards and prestigious fellowships and teaches photography to children in underserved communities.  He operates the website

www.mattmoyer.com, on which he offers custom-made prints of his photographs for sale to the public.

12.     On information and belief, the AP is the major American news wire service, with more than 280 offices around the world.  It offers news via text, photos, video, audio, graphics, and other media to some 1,400 newspapers and thousands more radio and broadcast outlets on a daily basis.  The AP offers goods and services to its members and the public at www.ap.org and on other websites including www.apimages.com, where it sells photos from its archives.

13.     On the morning of September 11, 2001, Mr. Moyer was in New York City when the attacks on the World Trade Center began.  Sensing that a major news story and historical event was unfolding, Mr. Moyer raced to lower Manhattan and arrived just as the second tower fell. Even though he wore no mask or other protective gear and felt strongly that his life could be in danger, he remained in the area to shoot images of the tense immediate aftermath of the attacks ("9/11 Images").  He was not on assignment for the AP or any other entity when he took the 9/11 Images.  Rather, at his own risk and on his own accord, he took these photographs on spec.

14.     That afternoon, he brought five rolls of film and two digital flash cards to the AP's New York office for review and consideration.  The editor on duty chose seven images ("Seven Images") to be put out over the AP wire.  The editor then gave Mr. Moyer an assignment to photograph a makeshift morgue.  When he left the office, Mr. Moyer took the digital cards with him but left the film so that four of the Seven Images could be scanned.

15.     On or about September 12, 2001, Mr. Moyer returned to the AP to pick up the processed film.

16.     During the days that followed, Mr. Moyer spoke with Joan Rosen, who was in charge of the AP's New York photo desk.  They agreed that the AP would pay Mr. Moyer $250 for the

one-time use of the Seven Images.  Accordingly, Mr. Moyer submitted to the AP an invoice that stated: "Purchase of WTC photos on 'Spec' as agreed to by Joan."  Exhibit 1.  He subsequently received payment from the AP per the invoice.  There was no written agreement.

17.     On or about October 9, 2001, Mr. Moyer received a check for $500 from the AP as a bonus for the work that he did for the AP during the weeks following the September 11, 2001, attacks.  Exhibit 2.  Indeed, Ms. Rosen at the AP gave such bonuses to several photographers who supplied pictures to the AP during that period, including Mr. Moyer's roommate at the time, who was also a photojournalist who had supplied pictures to the AP.  Accordingly, Mr. Moyer never invoiced the AP for $500; rather, the AP simply sent him the check unsolicited.

18.     Mr. Moyer worked on other freelance assignments for the AP until 2003.

19.     On or about February 10, 2003, Mr. Moyer received a letter proposing that he and the AP equally share revenue on commercial sales of seven of the 9/11 Images, which the AP was offering via its AP Wide World Photos service.  The term of the proposed agreement was one year, renewable by the parties' mutual consent.  Mr. Moyer did not sign or return the letter. Exhibit 3.  A letter transmitting a $750 check for unspecified past commercial sales accompanied the previously referenced letter (Exhibit 4), and Mr. Moyer deposited this check.  Mr. Moyer never personally received any other payments and is not aware of any other payments received by any third party on his behalf.  Mr. Moyer never received any other proposed agreement from the AP regarding the resale of the 9/11 Images or any other photographs.

20.     On or about July 26, 2011, Mr. Moyer became aware that the AP had posted 39 of the 9/11 Images, including the Seven Images and including two images that were derived from two of the 9/11 Images, on its image resale site, www.apimages.com.

21.     On or about July 29, 2011, Mr. Moyer contacted Gregory Payan, Deputy Director of AP Images Content, by telephone to demand that the AP cease and desist from its unauthorized uses. He then followed up and reiterated his demand in writing, via e-mail on August 5, 2011, attaching copies of the 39 9/11 Images he had discovered on the image resale site.  Exhibit 5. Despite several back-and-forth communications thereafter, in which Mr. Payan assured Mr. Moyer that the AP was looking into this matter (Exhibit 6), neither Mr. Payan nor anyone else at the AP offered an explanation to Mr. Moyer or took action.  Thus, on information and belief, the AP continued to display and sell the 9/11 Images willfully and without authorization.  In August 2013, Mr. Moyer's prior legal counsel sent a demand letter to the AP.  Neither Mr. Payan nor anyone else at the AP responded to the August 2013 letter.  On information and belief, even after this letter was sent and received, at least one of the 9/11 Images remained on the AP resale site.

22.     On information and belief, the use of at least one of the 9/11 Images is continuous and ongoing.  Exhibit 7.  On the morning of September 11, 2001, Mr. Moyer had provided 364 additional images from the September 11 attacks to the AP for review and consideration, but he does not know if these images have been posted on the AP's website or reproduced elsewhere.

23.     On or about August 5, 2011, Mr. Moyer became aware that the AP had also posted on its image resale site 159 images that Mr. Moyer did not take on the morning of the September 11 attacks.  Of the 159 images, Mr. Moyer had done approximately ten on spec ("Non-9/11 Spec Images").  Mr. Moyer had done the other approximately 149 images on assignment for the AP ("Assignment Images").  He never signed an agreement with respect to the Assignment Images. This use is continuous and ongoing.  On information and belief, approximately 101 of Mr.

Moyer's images remain on the AP resale site; 97 are Assignment Images, and four were shot on spec.  Exhibit 8.

24.     At no time were any written agreements executed between Mr. Moyer and the AP governing the AP's use of the 9/11 Images, the Seven Images, or the Assignment Images.

25.     The AP acquired only the one-time right to send the Seven Images out over the AP wire on September 11, 2001.

26.     The AP obtained no rights to any of the other 9/11 Images, which Mr. Moyer had provided only for review and consideration.  However, unbeknownst to Mr. Moyer, the AP apparently retained the 9/11 Images on its computer.

27.     While the AP acquired some limited rights to use the Assignment Images, Mr. Moyer never intended nor contemplated nor was told that the AP would offer the images for resale.

28.     On information and belief, in addition to offering the images for resale on its website, the AP also authorized third parties to use one or more of the images.  A few examples are contained in Exhibit 9.

29.     Mr. Moyer is the copyright owner of all of the images at issue. He holds copyright registrations for the 9/11 Images.  Exhibit 10.  Mr. Moyer has also applied to register the copyright in the Non-9/11 Spec Images and the Assignment Images.  Exhibit 11.

30.     On April 4, 2014, counsel for Mr. Moyer sent Amanda Morrison, IP Coordinator for the AP, a confidential letter demanding information as to the AP's unauthorized use of the images at issue.  Declaration of Arnold Lutzker.  Although Ms. Morrison acknowledged receipt of the letter, no substantive response was ever received, despite follow-up emails from Mr. Moyer's counsel. See Declaration of Arnold Lutzker.

**COUNT I**

**Copyright Infringement and Related Claims Pursuant to 17 U.S.C. §101, *et seq.***

31.     Plaintiff realleges and incorporates herein the allegations in Paragraphs 1-30, inclusive.

32.     By its actions alleged in this Complaint, Defendant has infringed and, unless enjoined by this Court, will continue to infringe Mr. Moyer's copyrights in and relating to his photographs.

33.     Defendant has reproduced Plaintiff's works, created derivative works based on them, displayed them publicly, and distributed them to the public on an unlimited and unrestricted basis without permission, all in violation of 17 U.S.C. §106.

34.     Plaintiff is entitled to receive all appropriate injunctive relief, including but not limited to the relief available under 17 U.S.C. §§ 502-503.

35.     Plaintiff is further entitled to recover from Defendant the damages, including attorney's fees, that he has sustained and will sustain, and any gains, profits, and advantages obtained by Defendant and losses sustained by Mr. Moyer  as a result of Defendant's willful acts of infringement alleged in this Complaint, including but not limited to the damages and awards available under 17 U.S.C. §§ 504-505.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A.     Preliminarily and permanently enjoining and restraining Defendant, its officers, directors, shareholders, agents, employees, and attorneys and all those acting in concert with them from:

1.     Reproducing, publicly distributing, publicly displaying, or preparing any derivative work of any of Plaintiff's works in any medium, including but not limited to print and online;

2.      Failing to provide proper credit for any work the use of which is authorized by Plaintiff;

3.      Stating directly or by implication that the depiction or use of Plaintiff's works has been authorized when it has not been authorized.

B.      Requiring Defendant to take appropriate action to correct all erroneous impressions that have been created concerning the nature, characteristics, ownership or authorization regarding Plaintiff's photographs, including without limitation, the prominent placement of corrective notifications in print, online, and by mail.

C.      Ordering that Defendant file with this Court and serve upon Plaintiff within 20 days after the service of such injunction, an affidavit, sworn to under penalty of perjury, setting forth in detail the manner and form in which Defendant has complied with such injunctions.

D.      Ordering an accounting of all revenues received by Defendant as a result of its unlawful conduct.

E.      Awarding Plaintiff: (1) defendant's profits realized as a result of the copyright infringement, or, in the Court's discretion, such sum as the Court finds to be just; (2) damages sustained by Plaintiff; and (3) the costs of this action.

F.      Awarding Plaintiff statutory damages and attorney's fees pursuant to 17 U.S.C. §§ 504-505.

G.      Awarding Plaintiff punitive damages in an amount to be determined.

H.      Awarding Plaintiff prejudgment and post-judgment interest on any monetary award in this action.

I.      Granting such other and further relief as to this Court deems just and proper.

<u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all claims for which there is a right to jury trial.

Dated: July 22, 2014

LUTZKER & LUTZKER LLP

By /s/ Arnold P. Lutzker_____
ARNOLD P. LUTZKER (Bar No. 29660)

Arnold P. Lutzker (Bar No. 29660)
Susan J. Lutzker (Bar No. 29661)
Allison L. Rapp (Bar No. 28930)
Jeannette M. Carmadella (Bar No. 29648)
Lutzker & Lutzker LLP
1233 20th Street, NW, Suite 703
Washington, DC 20036
Phone: (202) 408-7600
Fax:    (202) 408-7677
arnie@lutzker.com
susan@lutzker.com
allison@lutzker.com
jeannette@lutzker.com